UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
      :
EMMA CECILIA SIGUENCIA-ROMERO, *et al.*,  :
      :
      Petitioners,  :
      :
    -v-  :  25 Civ. 8975 (JPC)
      :
WILLIAM JOYCE, *et al.*,  :  OPINION AND ORDER
      :
      Respondents.  :
      :
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Petitioners, a mother and her two children, move the Court for a temporary restraining order ("TRO")[1] that would, among other things, require their immediate release from the custody of Immigration and Customs Enforcement ("ICE") and restrain Respondents from removing them from the United States. For the reasons explained below, Petitioners' motion is denied without prejudice to renewal upon a showing that Petitioners will suffer irreparable injury from their continued detention.

---

[1] The Court construes Petitioners' motion as a motion for a TRO, as opposed to a preliminary injunction. Petitioners' proposed order is captioned "[Proposed] Order Granting Petitioners' Emergency Motion For Temporary Restraining Order," and it specifically provides that "Petitioners' Motion for a *Temporary Restraining Order* is GRANTED." Dkt. 12 ("Proposed TRO") at 1 (emphasis added). To be sure, Petitioners elsewhere reference moving for "a Temporary Restraining Order *and* Preliminary Injunction," *id.* (emphasis added), and "the distinction between a [TRO] and a preliminary injunction . . . is often subtle and difficult to draw," *Austin v. Altman*, 332 F.2d 273, 275 (2d Cir. 1964), but it is nonetheless more precise to view Petitioners as moving for a TRO in light of the immediate relief requested and the lack of time for Respondents to be fulsomely heard. *See In re Crim. Contempt Procs. Against Crawford*, 329 F.3d 131, 138 (2d Cir. 2003) (explaining that a preliminary injunction is distinguished from a TRO by "notice and an opportunity for a hearing"); Wright & Miller, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2951 (3d ed.) ("[S]imply giving notice should not justify treating the order as a preliminary injunction because the time constraints do not allow the parties to prepare adequately for a hearing.").

## I. Background[2]

Petitioner Emma Siguencia-Romero ("Emma") and her children, Petitioners Evelyn Saeteros Siguencia ("Evelyn") and E.S.S., are citizens of Ecuador who fled that country and entered the United States in July 2021. Amended Petition ¶¶ 1, 19, 21. After being apprehended and detained at the border, Petitioners were released and allowed to travel to New York City. *Id.* ¶ 21. An Immigration Judge ("IJ") issued an order of removal for Petitioners on January 23, 2023, and the Board of Immigration Appeals ("BIA") affirmed the IJ's order on September 29, 2023, at which point the order of removal became final. *Id.* ¶ 23; *see id.* ¶ 2 ("Petitioners received a final order of removal on September 29, 2023."). Emma filed a currently pending motion to reopen her case with the BIA on June 26, 2025. *Id.* ¶ 26.

ICE detained Petitioners following an in-person hearing at 26 Federal Plaza in New York City on October 29, 2025. *Id.* ¶¶ 1, 4, 7. According to Petitioners, Respondents "made no allegation that changed circumstances warranted a revocation of [Petitioners'] release, and refused to consider evidence provided by [Petitioners'] attorney [which] indicat[ed] that Petitioners were in the process of applying for humanitarian immigration relief," namely a U visa for Emma and Special Immigrant Juvenile Status ("SIJS") for Evelyn and E.S.S. *Id.* ¶ 4; *see also* 8 C.F.R. § 214.14 (regulations governing U visas); 8 C.F.R. § 204.111(b)(3) (regulations governing SIJS). In fact, "ICE offered no additional reasons [for Petitioners' detention] other than that [P]etitioners had been ordered removed." Amended Petition ¶ 28. Later that same day, Petitioners filed a Verified Petition for

---

[2] The facts herein are taken from the allegations in Petitioners' Amended Verified Petition for Writ of Habeas Corpus and Complaint, Dkt. 10 ("Amended Petition"), which the Court assumes to be true for the purposes of this Opinion and Order. The Second Circuit has observed that district courts "have the discretion to rely on the pleadings and accompanying affidavits" in considering a motion for preliminary relief. *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 83 (2d Cir. 2024). Because the Court denies Petitioners' motion even assuming the truth of Petitioners' factual allegations, it need not decide whether the Amended Petition constitutes a sufficient evidentiary showing.

Emergency Writ of Habeas Corpus and Complaint for Injunctive Relief ("Initial Petition") in this District, Dkt. 1, and ICE subsequently transferred Petitioners to Dilley Immigration Processing Center in Texas, Amended Petition ¶¶ 1, 7.  *See id.* ¶ 11 ("Petitioners are currently detained at the Dilley Detention Center but were in ICE custody at 26 Federal Plaza, New York, New York at the time this Petition was initially filed on October 29, 2025.").  Emma is currently "detained together with [E.S.S.] but has been separated from . . . Evelyn, who is detained elsewhere at the Dilley Detention Center."  *Id.* ¶ 7.

On October 30, 2025, the Court ordered Respondents to respond to the Initial Petition no later than November 7, 2025.  Dkt. 2.  Then yesterday, November 4, 2025, at a little after 2:00 p.m., Petitioners filed their Amended Petition, Dkt. 10, and, a little after 4:00 p.m. that day, Petitioners moved for a TRO, Dkt. 12-1 ("Motion").

The Amended Petition pleads seven causes of action against Respondents.  First, Petitioners allege that "[b]ecause Respondents had no legitimate, non-punitive objective in revoking Petitioner's release, Petitioners' detention violates substantive due process" under the Fifth Amendment to the U.S. Constitution.  Amended Petition ¶ 71.  Second, Petitioners allege that their detention without "notice and a meaningful opportunity to respond violated procedural due process" under the Fifth Amendment.  *Id.* ¶ 73.  Third, Petitioners allege that their detention is "not in accordance with the [Immigration and Nationality Act] and implementing regulations governing orders of supervision."  *Id.* ¶ 83.  In particular, 8 U.S.C. § 1231(a)(3) provides that aliens such as Petitioners, who are not removed within the ninety-day removal period specified under Section 1231(a)(1), "shall be subject to supervision under regulations prescribed by the Attorney General."  8 U.S.C. § 1231(a)(3).  Petitioners maintain that Respondents violated this provision "by not placing Petitioner[s] on a proper Order of Supervision, which could only be revoked by the ICE Executive Associate Director."  Amended Petition ¶ 85.

Fourth, Petitioners allege that their detention is arbitrary or capricious under the Administrative Procedure Act ("APA"), *see* 5 U.S.C. § 706(2)(A), because Respondents failed to consider (1) "the serious constitutional concerns raised by revoking Petitioners' release without notice and an opportunity to respond"; (2) "the increased administrative burden to the agency caused by revoking the order of release of Petitioners"; (3) "reasonable alternatives to revoking Petitioners' order of release"; and (4) "Petitioners' substantial reliance interest" in ICE's alleged representation that the agency "would not detain or deport petitioners while a motion remained pending before the BIA." Amended Petition ¶¶ 96-99.  Petitioners also contend that, because Emma is eligible to apply for a U visa, and Evelyn and E.S.S. are seeking SIJS, their detention is arbitrary and capricious in that it contradicts ICE Directive 11005.3, which provides that "absent exceptional circumstances, ICE will refrain from taking civil immigration enforcement action against known beneficiaries of victim-based immigration benefits and those known to have a pending application for such benefits."[3]  *Id.* ¶¶ 103-108.

Fifth, Petitioners allege that their re-detention exceeded Respondents' statutory authority because "8 U.S.C. § 1231(a)(6) only authorizes detention past the 90-day removal period for a person who is found to be a danger to the community, unlikely to comply with a removal order, or whose removal order is on certain grounds specified in the statute."[4]  *Id.* ¶ 112.  Sixth, Respondents

---

[3] As Petitioners note, *see* Amended Petition ¶ 104, ICE Directive 11005.3 was superseded by ICE Directive 11005.4, which provides that "[w]hen encountering an alien during a civil immigration enforcement action who is not known to be an approved beneficiary of victim-based immigration benefits or to have applied or petitioned for such benefits, ICE officers and agents are not required to affirmatively seek to identify indicia or evidence suggesting an alien is a victim of a crime or consider such evidence as a positive discretionary factor in determining whether to take civil immigration enforcement action." Immigr. & Customs Enf't, Pol'y No. 11005.4, *Interim Guidance on Civil Immigration Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based Immigration Benefits*, available at https://www.ice.gov/doclib/foia/policy/11005.4.pdf (last visited Nov. 5, 2025).

[4] Section 1231(a)(6) allows, in certain circumstances, the Government to detain inadmissible or criminal aliens beyond the ninety-day removal period provided under Section

allege that their re-detention is unlawful because "[t]here is no statute, constitutional provision, or other source of law that authorizes Respondents to detain Petitioner[s]." *Id.* ¶ 114. Seventh and finally, Petitioners allege that under the Supreme Court's decision in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), Respondents' revocation of Petitioners' order of release "should be set aside for violating agency procedures, rules, or instructions," Amended Petition ¶¶ 118-19.

Petitioners' motion for a TRO seeks an order restraining Respondents "from removing Petitioners from the United States" and from "detaining the Petitioners for the purposes of civil immigration detention" "[p]ending consideration" of the case. Proposed TRO at 1-2. Petitioners also ask this Court to require Respondents to "transfer Petitioners back to this Court's jurisdiction," "reunify [Emma] with her daughter, Evelyn," and "produce the Petitioners to appear virtually for [a] SIJS hearing before the Queens County Family Court on November 10, 2025." *Id.* at 2.[5]

Petitioners argue that absent such relief, they will suffer immediate and irreparable harm for three reasons. First, Petitioners argue that "[t]he deprivation of [their] constitutional rights permit a per se finding of irreparable harm." Motion at 16. Second, Petitioners represent that "on November 4, 2025, the ICE deportation officer Ivan Gonzalez informed Counsel that ICE plans to remove Petitioners to Ecuador on November 6, 2025 at 2:30 AM." *Id.* at 17; *accord* Proposed TRO at 1. Finally, Petitioners argue that their "current detention is further interfering with their statutory rights and causing irreparable harm as it impedes [their] ability to complete and file their

---

1231(a)(1). But the Attorney General's regulations also provide additional bases for detaining aliens who have not yet been removed. *See* 8 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."); 8 C.F.R. § 241.4(l)(2) (listing reasons why an alien under supervision may be detained).

[5] Petitioners do not assert any independent legal theory to support why Respondents should be required to reunite Emma with Evelyn, produce Petitioners virtually for the SIJS hearing on November 10, or transfer Petitioners back to this District.

applications for the U visa and SIJS." Motion at 17.

Yesterday evening, just over four hours after receiving Petitioners' motion for a TRO, the Court ordered Respondents to respond to Petitioners' requests for injunctive relief no later than 12:00 p.m. today, November 5, 2025. Dkt. 13. Respondents duly filed a letter response by that deadline, arguing that the Court should deny injunctive relief "because it lacks subject matter jurisdiction to grant Petitioners a stay of removal pursuant to the jurisdiction-limiting provisions of the Immigration and Nationality Act ('INA'), specifically, 8 U.S.C. §§ 1252(a)(5), (b)(9), and (g)." Dkt. 14 (Response Letter) at 1. Less than three hours later, Petitioners filed a letter reply, arguing, *inter alia*, that Respondents' jurisdictional arguments were "premised on a mischaracterization of the relief sought by Petitioners." Dkt. 15 ("Reply Letter") at 1.

## II. Legal Standard

Parties seeking emergency relief generally must "show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (internal quotation marks omitted). But when plaintiffs seek a preliminary injunction or TRO "that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, . . . [they] must establish a clear or substantial likelihood of success on the merits." *Sussman v. Crawford*, 488 F.3d 136, 140 (2d Cir. 2007). Relevant here, the INA also provides that, "[n]otwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law." 8 U.S.C. § 1252(f)(2).

## III. Discussion

The emergency relief that Petitioners seek falls into two categories. First, Petitioners seek to restrain Respondents from removing them from the United States, and second, Petitioners seek to ameliorate the conditions of their allegedly unlawful detention. As explained below, the Court denies both categories of relief. The INA divests this Court of jurisdiction to consider Petitioners' challenge to their removal from the United States, and Petitioners have not shown irreparable harm resulting solely from their detention to warrant the extraordinary relief of a TRO.

A.      **Restraining Removal**

Title 8, United States Code, Section 1252(g) provides that, except as for certain challenges not relevant here, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." 8 U.S.C. § 1252(g). As the Supreme Court has explained, this provision was an outgrowth of the Executive Branch's longstanding practice of "deferred action," under which the Government often would exercise its discretion to decline to proceed in the initiation or prosecution of various stages of the deportation process. *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 483-84 (1999). "Since no generous act goes unpunished," deferred action "opened the door to litigation in instances where the [Government] chose *not* to exercise it." *Id.* at 484. Section 1252(g) put a stop to this trend, ensuring that the Executive Branch's decisions not to defer action, or to stop deferring action, would "not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." *Id.* at 485.

To be sure, Section 1252(g) strips jurisdiction only over challenges "arising from" decisions or actions to "commence proceedings, adjudicate cases, or execute removal orders," and because "the phrase 'arising from' is not infinitely elastic, . . . it does not reach claims that are independent of, or wholly collateral to, the removal process." *Kong v. United States*, 62 F.4th 608, 612-14 (1st Cir. 2023) (internal quotation marks omitted). In other words, Section 1252(g) does not "cover[] all claims arising from deportation proceedings or impose[] a general jurisdictional limitation." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (internal quotation marks omitted). For this reason, a court would have jurisdiction over a "detention-related claim . . . [that] has nothing to do with whether a removal action should be abandoned or whether the formal adjudicatory process should proceed." *Ozturk v. Hyde*, 136 F.4th 382, 398 (2d Cir. 2025) (cleaned up).

8

Here, Petitioners' request to restrain their removal from the United States is a direct challenge to the Executive Branch's decision to "execut[e] . . . a removal order." *See Troy ex rel. Zhang v. Barr*, 822 F. App'x 38, 39 (2d Cir. 2020) ("A stay of removal is a request to delay the execution of a removal order."). The Amended Petition argues that Petitioners' removal would be arbitrary and capricious under the APA because Respondents allegedly failed to consider Petitioners' "substantial reliance interest" in avoiding deportation, Amended Petition ¶ 99, and because deportation allegedly is prohibited by ICE Directive 11005.3, which prevents ICE, in most circumstances, from taking immigration enforcement actions against those with pending applications to become beneficiaries of victim-based immigration benefits, *id.* ¶ 103.[6] The problem with these arguments is that an arbitrary and capricious exercise of administrative discretion is still an exercise of discretion, so Section 1252(g) strips the Court of jurisdiction to hear this aspect of Petitioners' challenge. *Ragbir v. Homan*, 923 F.3d 53, 64 (2d Cir. 2019) ("To remove [a] decision from the scope of section 1252(g) because it was allegedly made based on unlawful considerations would allow plaintiffs to bypass § 1252(g) through mere styling of their claims."), *judgment vacated on other grounds sub nom. Pham v. Ragbir*, 141 S. Ct. 227 (2020); *Singh v. Napolitano*, 500 F. App'x 50, 52 (2d Cir. 2012) (concluding that the petitioner was "challeng[ing] the validity and execution of his removal order" by "assert[ing] that his custody pursuant to a final order of removal is illegal because he was granted asylum, a status precluding removal from the United

---

[6] To the extent that Petitioners also challenge their removal on the ground that it should be restrained pending resolution of Emma's motion to reopen before the BIA, such a challenge is barred by 8 U.S.C. § 1252(a)(5), which provides that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter." 8 U.S.C. § 1252(a)(5); *see Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) ("We conclude that Delgado is indirectly challenging her reinstated order of removal, and accordingly, we hold that section 1252(a)(5)'s jurisdictional bar applies equally to preclude such an indirect challenge.").

States").

Because this Court lacks jurisdiction to hear a challenge to Respondents' execution of Petitioners' removal from the United States, Petitioners have not shown a likelihood of success on the merits for the request to restrain their removal. The Court thus denies the request for such relief.[7]

### B.     Challenges to Detention

Aside from their impending removal to Ecuador, Petitioners argue that they will suffer irreparable harm absent a TRO for two reasons. First, Petitioners argue that "[t]he deprivation of [their] constitutional rights permit a per se finding of irreparable harm." Motion at 16. But as the Second Circuit recently held, it is "incorrect" that "a violation of constitutional rights per se constitutes irreparable injury." *Nat'l Ass'n for Gun Rts. v. Lamont*, 153 F.4th 213, 248 (2d Cir. 2025) (internal quotation marks omitted). And although "[t]he Second Circuit has presumed irreparable harm for alleged deprivations of certain constitutional rights, including for First, Fourth, and Eighth Amendment rights," *Mercado v. Noem*, No. 25 Civ. 6568 (LAK), 2025 WL 2658779, at *23 (S.D.N.Y. Sept. 17, 2025), no First, Fourth, or Eighth Amendment violations are alleged here. Moreover, as in *Lamont*, Petitioners "offer little argument as to why [the Court] should extend the presumption of irreparable harm in the context of this case. And the Supreme Court's recent emphasis on the limits of [a court's] equitable powers caution against extending the presumption to new contexts." *Lamont*, 153 F.4th at 248.

Second, Petitioners argue that their "current detention is further interfering with their

---

[7] Even if Petitioners were likely to succeed on the merits of their challenge to removal, they have not shown that they would suffer irreparable harm. The Supreme Court has made clear that while "removal is a serious burden for many aliens, it is not categorically irreparable." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Petitioners have not presented "any additional arguments showing why [the unique circumstances of their] removal" would cause irreparable harm. *Sarkisov v. Bondi*, 138 F.4th 976, 979 (6th Cir. 2025).

statutory rights and causing irreparable harm as it impedes [their] ability to complete and file their applications for the U visa and SIJS." Motion at 17.  Petitioners contend that Evelyn and E.S.S. are "unable to attend their scheduled family court appearances" and that "[c]ounsel for [Emma] is unable to meet with her promptly to secure necessary information and signatures for the U visa filing." *Id.*  Petitioners do not explain, however, how these inconveniences will ultimately impact their applications.  For example, Petitioners do not assert that Evelyn's and E.S.S.'s SIJS applications will be denied if they fail to attend their next family court appearance on November 10.  Nor have Petitioners shown that the lack of "prompt[]" communication between Emma and her counsel will result in the denial of a U visa.

More generally, both of Petitioners' arguments for irreparable harm arising out of their detention fall well short of satisfying the showing required for a TRO, as opposed to a preliminary injunction.  In a context such as this, where Respondents have been afforded less than one day to respond, Petitioners must show an injury that is not only urgent, but *so urgent* that it cannot wait even until Respondents can be afforded a meaningful opportunity to be heard.  *See Pan Am. World Airways, Inc. v. Flight Eng'rs' Int'l Ass'n*, 306 F.2d 840, 842-43 (2d Cir. 1962) ("The purpose of a temporary restraining order is to preserve an existing situation in statu quo until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction."); *see also Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974) ("[O]ur entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute.").[8]

---

[8] Affording Respondents adequate opportunity to be heard is important because there are serious questions as to whether the Court can exercise jurisdiction even over Petitioners' challenges to their detention.  *See, e.g.*, *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 298-99 (3d Cir. 2020) ("Re-detaining Tazu was simply the enforcement mechanism the Attorney General picked to execute his removal.  So [Section] 1252(g) funnels review away from the District Court and [the Court of Appeals]."); *Rodriguez v. Warden, Orange Cnty. Corr. Facility*, No. 23 Civ. 242 (JGK),

The Court here ordered Respondents to respond to the Initial Petition on an expedited timeframe by November 7, 2025. Petitioners' motion for a TRO does not allege any harm arising out of their detention that is so urgent that it could not wait to be resolved until after allowing Respondent the opportunity to be heard by that date. In fact, the only thing that appears to have changed between October 29, when the Initial Petition was filed, and November 4, when Petitioners moved for a TRO, is that Petitioners learned that ICE planned to remove them to Ecuador on the morning of November 6. But as discussed above, the INA strips the Court of jurisdiction to hear any challenge relating to Petitioners' removal, and thus, this new development cannot be the basis for immediate relief.[9]

### IV. Conclusion

Because the Court lacks jurisdiction to consider Petitioners' request to stay their removal, and because Petitioners have not shown irreparable harm arising solely from their detention, the Court denies Petitioners' motion for a TRO, without prejudice to Petitioners filing a renewed motion for emergency relief showing why Petitioners will suffer irreparable harm from their continued detention absent a preliminary injunction.

---

2023 WL 2632200, at *4 (S.D.N.Y. Mar. 23, 2023) (similarly holding that Sections 1252(a)(5), (b)(9), and (g) bar jurisdiction where "it is plain that the petitioner seeks an end to his detention, which was undertaken for the precise purpose of effectuating his existing removal orders").

[9] In their letter reply in support of a TRO, Reply Letter at 3 n.2, 6, Petitioners argue for the first time that declining to grant the requested relief would conflict with the Suspension Clause, which provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. It is well-settled, however, that Congress may "without raising any constitutional questions [under the Suspension Clause], provide an adequate substitute through the courts of appeal." *I.N.S. v. St. Cyr*, 533 U.S. 289, 314 n.38 (2001). The INA provides such a substitute, in that Petitioners may petition a federal court of appeals for relief from a BIA decision. *See* 8 U.S.C. § 1252(a)(5).

As previously ordered, Respondents also should file an additional response addressing Petitioners' detention-related claims no later than November 7, 2025.

SO ORDERED.

Dated: November 5, 2025
New York, New York

_____
JOHN P. CRONAN
United States District Judge